**Certiorari Denied, April 18, 2012, No. 33,518**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-054**

**Filing Date: February 20, 2012**

**Docket No. 29,538**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**ERIC FIERRO,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Charles W. Brown, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

**{1}** Defendant Eric Fierro appeals his convictions for eight counts of first degree criminal sexual penetration (CSP), sixteen counts of second degree CSP, four counts of third degree criminal sexual contact (CSC), and two counts of bribery of a witness, all connected to his actions in sexually abusing his step-daughter, Vanessa, over a period of twelve years. On appeal, he claims that the fifty-five-month period between his arrest and second trial violated

1

his right to a speedy trial, and, in the alternative, he claims ineffective assistance of counsel. We disagree that Defendant's speedy trial rights were violated because a significant portion of the delay to trial was due to Defendant's repeated claims that his counsel was ineffective and to the district court's justifiable efforts to ensure that Defendant received adequate representation. We further hold that counsel was not ineffective. Therefore, we affirm Defendant's convictions.

**BACKGROUND**

{2} Defendant was arrested on June 24, 2004, and indicted on multiple counts of CSP, CSC, and other criminal behavior relating to the alleged sexual abuse of Vanessa from the time she was six years old until she was eighteen. He was arraigned on July 19, 2004, and public defender Michael Rosenfield entered an appearance on his behalf and made a speedy trial demand on August 13, 2004.

{3} On December 16, 2004, the State filed the first stipulated Rule 5-604 NMRA petition for a six-month rule extension because it was waiting for DNA results and because Defendant was without counsel due to Rosenfield's reassignment to a different division of the public defender's office. In the petition, the parties characterize the case as a "[c]omplicated" one "involving allegations of long term sexual abuse by [D]efendant of his step-daughter." On February 1, 2005, Donald Kochersberger entered his appearance on behalf of Defendant and demanded a speedy trial.

{4} The State filed a second opposed petition for a six-month rule extension on April 1, 2005, because the DNA results were still not available, preliminary plea negotiations were ongoing, and Kochersberger had recently entered his appearance. In April 2005, the State received the DNA results establishing that Defendant had fathered a child with Vanessa, and the State provided the results to Defendant.

{5} On July 1, 2005, the State filed a third opposed petition for a six-month rule extension outlining some discovery provided to Defendant and stating that preliminary plea negotiations were ongoing. Although Defendant objected to the petition, he agreed during pretrial conferences on July 7, 2005 and August 3, 2005, that the case was not ready for trial.

{6} On September 23, 2005, the State filed a fourth opposed petition for a six-month rule extension followed by an addendum on October 13, 2005. It noted that the parties were working together on discovery issues and they expected to begin witness interviews within a month, but the parties would not be ready for trial before early 2006, and court staff had yet to set a trial date due to a family illness. Although Defendant objected to the extension, he agreed that the parties would not be ready for trial until early 2006. Trial was set for March 27, 2006.

{7} In December 2005, Eric Turner, Kochersberger's law partner, took over Defendant's representation, and on February 3, 2006, Turner filed a notice that he would be unavailable

2

for trial on March 27, 2006. Despite his unavailability for trial, Turner filed a motion to dismiss for violation of Defendant's speedy trial rights on February 22, 2006.

**{8}** On March 2, 2006, Defendant filed a pro se motion to represent himself, stating that no progress had been made in his case and his efforts to participate in his defense had been rebuffed by counsel. On March 13, 2006, Turner submitted a stipulated motion to continue the trial. The following day, Defendant personally asked the district court to grant Turner more time to prepare for trial, and he agreed to a six-month extension.

**{9}** The State urged the district court to set trial as soon as Turner returned from vacation, but the court granted the continuance and reset trial for July 10, 2006. On March 22, 2006, the State filed a fifth stipulated petition for a six-month rule extension because Defendant had obtained new counsel in mid-December 2005 and the March 27, 2006 trial setting had to be vacated due to defense counsel's unavailability.

**{10}** On April 13, 2006, Defendant appeared before the district court on his motion to proceed pro se and a speedy trial motion. He accused Turner and Kochersberger of malpractice, failure to communicate, failure to investigate, and failure to assert what Defendant believed to be legitimate issues. Turner conceded that he had been unable to establish an attorney-client relationship with Defendant. The State agreed that Defendant should have different counsel if his relationship with Turner was irreparably damaged, but it expressed concerns because a new attorney would need time to get up to speed on the "massive amount of discovery" that had been produced, and speedy trial problems might arise if the July 10 setting could not be maintained. The court allowed Turner to withdraw due to the breakdown in the attorney-client relationship, but it stressed the urgency of having a new attorney immediately assigned to Defendant due to the upcoming trial date. After extensively investigating Defendant's capacity to represent himself, the district court urged Defendant to consult with a new attorney, and it refused to consider Defendant's speedy trial motion until he acquired new counsel, which the court hoped would happen within the next few days.

**{11}** Turner withdrew on April 19, 2006, and Defendant filed an addendum to his pro se speedy trial motion on May 9, 2006, indicating that a potential witness, Aaron Chavez, was shot and killed on April 17, 2006.

**{12}** On or around May 19, 2006, David Pottenger was appointed to represent Defendant, but he never entered an appearance or made any filings on Defendant's behalf. Defendant filed a pro se "notice of appeal for interlocutory appeal for motion to dismiss for speedy trial" on June 28, 2006. In late June, the State inquired whether Pottenger would be ready for trial on July 10, 2006, and it was informed first that Pottenger was in the hospital and later that he had lost his contract with the public defender's office.

**{13}** Troy Prichard appeared on behalf of Defendant on July 10, 2006, the date set for trial, and proceedings were continued to give Prichard an opportunity to prepare. Although

Prichard was not ready for trial, he filed a speedy trial demand along with his appearance. On July 24, 2006, the district court set trial for December 4, 2006, and the State filed the sixth stipulated petition for a six-month rule extension due to the replacement of Defendant's counsel.

{14}    Although represented by Prichard, Defendant filed a pro se motion to amend his speedy trial motion on July 20, 2006, claiming that his counsel, both former and current, were ineffective. Appearing before the district court on September 26, 2006, Defendant claimed that Prichard was not keeping in contact with him and asked for dismissal on ineffective assistance grounds. The court instructed Defendant to file a motion stating these contentions.

{15}    On November 17, 2006, approximately four months after Prichard had appeared on Defendant's behalf and less than a month before trial, the court met with Defendant and Prichard to discuss some of Defendant's pro se motions and his dissatisfaction with Prichard. Defendant accused Prichard of failing to communicate and rendering ineffective assistance by failing to seek dismissal on speedy trial grounds, failing to investigate, and having a conflict of interest. Defendant claimed that he had a problem with the public defender's office and asked for Prichard to be dismissed so he could retain private counsel. He requested a six-month rule extension to retain other counsel or to prepare to defend himself.

{16}    Prichard informed the district court of actions he had taken on behalf of Defendant, including reviewing the file, hiring a private investigator who had interviewed witnesses, speaking with Defendant and the district attorney, and explaining the State's "comprehensive" plea offer to Defendant. He explained that he had counseled Defendant to stop filing pro se motions and that some of his issues were not worth pursuing, but Defendant refused his advice and was unhappy with Prichard for informing him that certain filings were not in his best interest.

{17}    At the hearing, the district court noted that it would be the fifth time Defendant's counsel would be replaced for issues that could not be attributed to the State, and, if the court allowed Prichard to withdraw, Defendant would be injecting additional delay which could not be attributed to the State for purposes of speedy trial. The court instructed Defendant that he needed to work with the counsel assigned to him, but Defendant insisted that he needed trustworthy replacement counsel outside of the public defender's office, and he wanted to postpone trial an additional six months in order to obtain private counsel. The State objected due to speedy trial concerns and the numerous previous continuances. However, the court continued the trial to give Defendant an opportunity to obtain new counsel, while cautioning him that each request for an extension or continuance would weigh against him in terms of any speedy trial claims.

{18}    On December 13, 2006, the State filed a seventh stipulated petition for a six-month rule extension so that Defendant could obtain new counsel even though the State opposed the extension. At the status conference the following day, Defendant had yet to obtain new

4

counsel but continued to want to dismiss Prichard, claiming that he would not come to the jail to meet with Defendant. Defendant stated that his father was trying to obtain private counsel for him and wanted an additional week for him to do so.

**{19}** Prichard claimed he had done his best but was unable to satisfy Defendant and agreed his dismissal was warranted due to the severe breakdown in the attorney-client relationship. The district court permitted Prichard to withdraw over the State's objection. The State then stressed the need for an immediate appointment of new counsel and a trial date, offered its assistance in contacting the chief public defender so that counsel could be appointed for Defendant, and urged the district court to schedule a conference in two weeks to check Defendant's progress. The district court declined to hear any of Defendant's motions until he was represented by counsel. Trial was set for May 14, 2007.

**{20}** Defendant filed a pro se petition for writ of mandamus on January 3, 2007, claiming his speedy trial motions had yet to be heard, he had received ineffective assistance of counsel, and he was entitled to dismissal. At a status conference on January 4, 2007, the State explained its efforts in assisting to obtain counsel for Defendant. Defendant asked why his various pro se filings had not been addressed, and the district court informed Defendant that he had not been authorized to proceed pro se because he was supposed to be obtaining a private attorney. The State wanted a firm deadline for Defendant to obtain private counsel, but the district court refused.

**{21}** On January 8, 2007, Raul Lopez entered his appearance on behalf of Defendant and demanded a speedy trial. He withdrew and substitute private counsel, Houston Ross, entered his appearance on behalf of Defendant on March 29, 2007, and demanded a speedy trial. On the day set for trial, May 14, 2007, Ross moved for a continuance on the grounds that he needed more time to prepare. The State was ready for trial, but did not oppose the continuance, and it was granted. Despite his recent request for a continuance in order to prepare, Ross filed a motion to dismiss for violation of Defendant's speedy trial rights on June 7, 2007.

**{22}** The State filed its eighth opposed petition for a six-month rule extension on June 28, 2007. The petition stated that an extension was needed because there had been a large number of defense attorneys, Defendant was not ready to try the case at the May 14, 2007 setting, although the State was ready, and Defendant had filed a number of motions that were unlikely to be heard within the current six-month period, which expired on July 10, 2007.

**{23}** On August 2, 2007, the district court conducted a hearing on Defendant's speedy trial motion and, as discussed in greater detail in the analysis of Defendant's speedy trial claims, denied the motion. At the same time, the State announced it was preparing an amended indictment to omit charges referring to time periods when Defendant and his family lived outside of Bernalillo County. On September 4, 2007, the case was reassigned from Judge J. Michael Kavanaugh to Judge Charles Brown, and trial was set for December 10, 2007.

**{24}** On September 11, 2007, though represented by Ross, Defendant filed a pro se addendum to the June 7, 2007 speedy trial motion, claiming that there were systematic problems in the public defender's office and that he had criticisms and concerns regarding Ross's representation, including Ross's presentation of Defendant's speedy trial arguments during the August 2, 2007 hearing. On September 21, 2007, Defendant also filed a motion to be allowed to proceed pro se, contending that Ross had an undisclosed interest with the public defender's office and had failed to present all of Defendant's arguments at the speedy trial hearing. On November 13, 2007, Ross filed a motion to reconsider the denial of the speedy trial motion, arguing that the district court had improperly weighed the speedy trial factors at the August 2, 2007 hearing.

**{25}** On December 7, 2007, Ross filed a motion to withdraw and to appoint a public defender to represent Defendant. Ross claimed that Defendant had created a conflict of interest and an adversarial relationship by claiming that Ross was ineffective, thus making it impossible for him to represent Defendant, that Defendant had stopped paying his fees, and that Defendant's father had filed a complaint against Ross with the State Bar of New Mexico. On December 10, 2007, the date set for trial, the State informed the district court that it was ready for trial, but the court continued the trial over the State's objection and permitted Ross to withdraw.

**{26}** On December 12, 2007, the State filed a ninth petition for a six-month rule extension because Defendant was without counsel and not ready to proceed to trial. The district court then set trial for June 23, 2008. The Supreme Court granted the extension, but it admonished the parties that the "June 23, 2008 trial setting will NOT be continued, extended or otherwise changed without express concurrence of Justice [Richard] Bosson" and the public defender representing Defendant would not be changed without the concurrence of Justice Bosson.

**{27}** John McCall was appointed to represent Defendant in February 2008. Although not ready for trial, McCall filed a motion to dismiss for speedy trial violation on June 16, 2008. A hearing was held on June 17, 2008, but the district court deferred ruling on the motion.

**{28}** In June and July 2008, McCall sought continuances, claiming he was not ready for trial because the defense needed to conduct more witness interviews and because of his health concerns. At the hearing on July 7, 2008, McCall informed the district court that he wanted a continuance and claimed that it would be ineffective assistance of counsel if he were to proceed to trial at that point. He outlined a number of matters that he believed needed further investigation. The State explained how the information McCall was seeking had already been provided to the defense or was readily available. During the same hearing, McCall, on behalf of Defendant, again sought dismissal on speedy trial grounds, but the district court denied the motion.

**{29}** Defendant sought a tenth petition for a six-month rule extension from the Supreme Court, which the State opposed. The district court postponed trial until August 18, 2008, based in part on defense counsel's health concerns.

**{30}** Trial began on August 18, 2008, but the district court declared a mistrial on the fourth day after Vanessa improperly commented that her baby had been fathered by Defendant and impermissibly referred to Defendant's actions in having sex with her outside of Bernalillo County. The State moved for a new trial setting at the court's earliest convenience, and trial was set for September 16, 2008. Defendant moved to vacate the trial setting because he had not yet served witness subpoenas. The district court vacated the trial setting over the State's objection.

**{31}** The State requested a trial date of November 17, 2008, but Defendant objected because he was not ready due to a failure to serve witness subpoenas. Defendant again sought dismissal on speedy trial grounds, but the district court denied his motion.

**{32}** Trial commenced on January 12, 2009, and Defendant again sought dismissal on speedy trial grounds. The district court denied the motion, and a jury convicted Defendant of the charges. Defendant raised his speedy trial contentions one final time in a motion for new trial, which the district court denied.

**SPEEDY TRIAL**

**{33}** Defendant argues that the fifty-five-month delay between his arrest and second trial violated his right to a speedy trial. "The right to a speedy trial is a fundamental right of the accused." *State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387. In considering a speedy trial claim, New Mexico has adopted the balancing test articulated by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), which sets forth four factors to be considered when determining whether a defendant's speedy trial rights were violated: "(1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant." *Garza*, 2009-NMSC-038, ¶ 13 (internal quotation marks and citation omitted). "These four factors are interrelated and must be evaluated in light of other relevant circumstances in the particular case. No one factor constitutes either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial." *State v. Johnson*, 2007-NMCA-107, ¶ 5, 142 N.M. 377, 165 P.3d 1153 (internal quotation marks and citation omitted).

**{34}** On appeal, we defer to the district court's factual findings, but then "independently evaluate the four *Barker* factors to ensure that the constitutional right has not been violated." *Id.* In this case, although Defendant's speedy trial claim was considered five times between August 2, 2007, and March 6, 2009, the district court's most comprehensive analysis of Defendant's speedy trial claims occurred during the August 2, 2007 hearing. Therefore, to the extent pertinent facts remained unchanged since August 2, 2007, we give deference to, and rely on, the district court's findings at that hearing.

**Length of Delay**

**{35}** On appeal, we consider the length of delay as both "a threshold inquiry that triggers

7

the rest of the analysis" and "as part of the balancing test itself." *State v. Stock*, 2006-NMCA-140, ¶ 13, 140 N.M. 676, 147 P.3d 885. We begin with the threshold inquiry.

{36}    The time between Defendant's arrest on June 24, 2004, and the start of trial on January 12, 2009, was almost fifty-five months. The district court found Defendant's case to be of intermediate complexity, and a delay of fifteen months is presumptively prejudicial in intermediate cases, thus triggering a need to consider of all of the *Barker* factors. *See Garza*, 2009-NMSC-038, ¶¶ 23, 48. In balancing a delay of almost forty months beyond the bare minimum, this factor weighs heavily in Defendant's favor and against the State. *See id.* ¶ 24 ("[T]he greater the delay the more heavily it will potentially weigh against the [s]tate.").

**Reasons for the Delay**

{37}    We next consider "[t]he reasons for a period of the delay [that] may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Id.* ¶ 25 (internal quotation marks and citation omitted). We allocate the reasons for the delay to each side and determine the weight attributable to each reason. *See State v. Plouse*, 2003-NMCA-048, ¶ 45, 133 N.M. 495, 64 P.3d 522.

{38}    The State is responsible for the period from the arrest until the time the DNA results were available, which accounts for approximately ten to eleven months of the delay. In assigning weight to this period, Defendant claims it was "entirely wasted" because the DNA results concerned events occurring outside of Bernalillo County and were therefore inadmissible. We disagree because, at the time the State sought DNA testing, it had not been established that the results would be inadmissible. Moreover, the district court did not unconditionally exclude the DNA test results establishing that Defendant fathered Vanessa's child, but it instead ruled that the evidence might be admissible to negate any claims by Defendant that he never had sex with Vanessa or to establish Vanessa's credibility. Finally, the State was not solely responsible for this delay because during the same time period, Defendant changed counsel, and his new counsel needed time to prepare for trial. Thus, although the initial period from arrest to when the DNA results were provided weighs against the State, it does so minimally. *See Garza*, 2009-NMSC-038, ¶ 27 (recognizing that some pretrial delay is inevitable and justifiable); *cf. State v. Parrish*, 2011-NMCA-033, ¶ 25, 149 N.M. 506, 252 P.3d 730 (weighing a four-and-one-half-month period during which "judges were reassigned and the [s]tate produced discovery, identified witnesses, and requested discovery from [the d]efendant" neutrally after determining that "the case progressed with customary promptness during this period").

{39}    The period from receipt of the DNA results, approximately April or May 2005 to March 2006, weighs neutrally because the parties were apparently working on discovery and obtaining a possible sex offender evaluation of Defendant by Dr. Moss Aubrey, and Defendant agreed the case would not be ready for trial until early 2006. *See Garza*, 2009-NMSC-038, ¶ 27; *cf. State v. Valencia*, 2010-NMCA-005, ¶ 21, 147 N.M. 432, 224 P.3d 659

(stating that any delay occasioned by jointly requested continuances weighs neutrally).

**{40}** From March 2006 until the first trial on August 18, 2008, we attribute the delay to Defendant because the State was prepared for trial as of March 2006 and did everything it could to move the case toward trial. However, Defendant was allowed to change counsel at crucial times, which necessitated repeated continuances so defense counsel could adequately prepare a defense, which in turn resulted in Defendant being unprepared for trial until August 18, 2008. *See Vermont v. Brillon*, __ U.S. __, 129 S. Ct. 1283, 1290-92 (2009) (stating the general rule that delays sought or caused by defense counsel are ordinarily attributed to the defendant and applying that rule to hold that the delay caused by the failure of assigned counsel to move a case forward by requesting extensions and continuances should not be attributed to the state); *cf. State v. Stefani*, 2006-NMCA-073, ¶ 18, 139 N.M. 719, 137 P.3d 659 (noting that "when the constitutional right to a speedy trial is at issue, delays attributed to [the d]efendant weigh against the [d]efendant in later claims of violation"); *State v. Mascareñas*, 84 N.M. 153, 155, 500 P.2d 438, 440 (Ct. App. 1972) (recognizing that "where a defendant causes or contributes to the delay, or consents to the delay, he may not complain of a denial of the right" to a speedy trial).

**{41}** Primarily relying on *Stock*, Defendant argues that the delays caused by his changes in counsel should not be attributed to him but instead should weigh against the State, because it is the State's responsibility to ensure that Defendant goes to trial in a timely manner and the State's burden to provide counsel to an indigent defendant. In *Stock*, the district court had attributed over two-thirds of the three-and-a-half-year delay to "the nearly complete lack of attention to the case on the part of both the [s]tate and defense counsel." 2006-NMCA-140, ¶ 20. That court had found that the public defenders were working under extreme and unworkable case load levels and weighed the delay caused by the inactions of the public defenders against the state. *Id.* ¶¶ 8, 10, 26. Furthermore, the district court questioned whether the defendant agreed to defense counsel's continuances because, given that he had the intellectual capacity of a twelve year old, it was unclear whether the defendant was capable of acquiescing to the delays. *Id.* ¶ 11. Moreover, because the defendant was not present at the hearings, he was never given a chance to express his frustration with the delays. *Id.*

**{42}** On appeal, this Court agreed with the district court's analysis. *Id.* ¶ 29. While recognizing the general rule that a defendant is held accountable for the actions of his or her attorney, this Court nonetheless also recognized that, in certain cases, attorney neglect could not be held against a defendant. *Id.* ¶¶ 21-22; *see Brillon*, 129 S. Ct. at 1292 (recognizing an exception to the general rule that delay caused by assigned counsel is attributed to the defendant if the delay results in a "systemic breakdown in the public defender system" (internal quotation marks and citation omitted)). Further, this Court concluded that *Stock* was such a case and affirmed the district court's conclusion that the reasons for delay must weigh against the state. *Stock*, 2006-NMCA-140, ¶¶ 26, 29.

**{43}** We are not convinced that this case presents circumstances warranting the conclusion

9

reached in *Stock*. In this case, the district court did not find that the delay was caused by the poor performance of Defendant's attorneys, their neglect, or any institutional deficiencies of the public defender system. *Cf. Brillon*, 129 S. Ct. at 1292-93 (holding that the Vermont court improperly attributed delays caused by defense counsel to the state in the absence of information in the record suggesting that institutional problems caused part of the delay). Instead, the district court found that the numerous continuances and extensions were due to Defendant's actions in changing counsel and questioning counsel's strategies. Unlike in *Stock*, the district court specifically found that neither the State nor defense counsel sat on their hands, and even Defendant's own counsel opined that there was no fundamental breakdown in the public defender system.

{44}    In addition, unlike in *Stock* in which the state facilitated the delay by doing "little or nothing to ascertain what was happening in the case or to move the case forward[,]" 2006-NMCA-140, ¶ 25, in this case, the State was ready for trial and trial was set six times before August 2008, only to be vacated so that Defendant could obtain new counsel or his newly appointed counsel could prepare for trial. Also, unlike in *Stock*, Defendant in this case was fully capable of asserting his rights and considering and acquiescing to the actions of his public defenders and private counsel, and the record is replete with examples of pro se pleadings and arguments made by Defendant on his own behalf, thus illustrating his capabilities. It was often at Defendant's personal request or as a result of his own actions that proceedings were delayed.

{45}    Defendant also contributed to the delay during this period because the district court was reluctant to allow Defendant to appear pro se or to decide important, potentially dispositive motions when Defendant was without the benefit of counsel. Our review of the proceedings below indicates that the district court and the State were trying to ensure that Defendant was provided with effective, prepared counsel in a response to Defendant's repeated assertions that he should represent himself or that his counsel was failing to provide adequate representation. *See Garza*, 2009-NMSC-038, ¶ 11 (recognizing that, although "speed is an important attribute . . . , if either party is forced to trial without a fair opportunity for preparation, justice is sacrificed to speed [and] [w]e cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate" (alteration, internal quotation marks, and citations omitted)). While we agree with Defendant that it is ultimately the State's burden to bring a criminal defendant to trial in a timely manner, we are unpersuaded that the State failed to meet its burden in this case.

{46}    We are also unpersuaded by the out-of-state authority cited by Defendant in support of his contention that this delay must be attributed to the State. In one case, the delay was not caused by the need for defense counsel to adequately prepare for trial. *See Middlebrook v. State*, 802 A.2d 268, 275 (Del. 2002) (characterizing the trial court's failure to rule on the defendant's motion to suppress for over a year as "inexcusable" and holding the state responsible for the court's failure to rule on the motion and the nine-and-one-half-month delay resulting from the failure of the court or the state to oppose defense counsel's vacation plans despite the long period during which charges had been pending). The other does not

even concern a speedy trial matter. *See People v. Brown*, 235 N.E.2d 562, 564-65 (Ill. 1968) (reversing the trial court's decision to dismiss the defendant's appeal for want of prosecution when the defendant's counsel was at fault).

**{47}** Moreover, we cannot agree with Defendant's central contention that he should not be held accountable because the delay was caused by his attorneys and the "overburdened [p]ublic [d]efender system[.]" Nor was Defendant being forced to choose between his right to a speedy trial and his right to effective assistance of counsel. To the contrary, the district court was receptive to Defendant's assertions of perceived deficiencies in his counsel, and it continued to grant continuances to assist Defendant even when the State expressed concerns about speedy trial problems and even when the State objected to additional continuances. The period of delay between March 2006 and trial in August 2008 weighs against Defendant. *See Brillon*, 129 S. Ct. at 1292-93.

**{48}** Turning to the time period between mistrial and retrial, we note that the State immediately sought retrial, but additional delay resulted from defense counsel's inability to serve subpoenas. The district court found that trial was set as soon as possible due to Defendant's need to subpoena witnesses and scheduling conflicts. Therefore, this period should weigh neutrally. *See State v. O'Neal*, 2009-NMCA-020, ¶¶ 20-21, 145 N.M. 604, 203 P.3d 135 (weighing period between declaration of mistrial due to possible juror misconduct and the rescheduled second trial neutrally); *cf. Parrish*, 2011-NMCA-033, ¶ 27 (weighing the two-month period after the appellate court issued mandate and the date of the defendant's trial neutrally because the "case proceeded with customary promptness following the remand").

**{49}** In sum, the reasons for the delay factor weighs against Defendant. Before concluding our analysis of the reasons for delay, we briefly address two procedural matters that Defendant contends resulted in a delay that should be imputed to the State. First, Defendant claims that the State is responsible for portions of the delay because it initially charged him with conduct occurring outside of Bernalillo County and persisted in this error even after Defendant brought it to the State's attention.

**{50}** Defendant's pro se filing denying all of the charges in the complaint did include a claim of improper venue, but such a general denial did not inform the State of any specific venue challenge. Once defense counsel moved to dismiss counts two through twenty-two for improper venue on June 7, 2007, the State filed a timely response on June 29, 2007, seeking to amend the indictment to dismiss count 14 and to narrow the range of dates charged in the remaining counts so as to exclude any time period when Defendant and his family lived outside of Bernalillo County. Given the State's prompt action in seeking to amend the indictment, we decline to attribute any delay to the State based on the over-inclusive initial indictment.

**{51}** We are also not convinced that delay should be attributed to the State because it was "tardy" in recognizing that Defendant's taped statement to detectives could not be used at

trial, because the record indicates that the State had no intention of attempting to use Defendant's confession at trial. Because Defendant has failed to show how either of these matters resulted in delay to trial, we decline to attribute any additional delay to the State based on these contentions.

**Assertion of the Right**

{52}    In considering Defendant's assertion of his right to a speedy trial, we assess the timing of the assertions "and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. "Thus, we accord weight to the frequency and force of the defendant's objections to the delay." *Id.* (internal quotation marks and citation omitted). "We also analyze the defendant's actions with regard to the delay." *Id.* Defendant contends that this factor should weigh heavily in his favor because his assertion of his right to speedy trial was early, frequent, and forceful. *See Zurla v. State*, 109 N.M. 640, 644, 789 P.2d 588, 592 (1990).

{53}    Each of Defendant's attorneys who entered an appearance filed pro forma demands for speedy trial when they entered their appearances, but such "[e]arly pro forma assertions are generally afforded relatively little weight." *Valencia*, 2010-NMCA-005, ¶ 27. Defendant also repeatedly asserted his speedy trial rights in motions filed by counsel and in various pro se filings he submitted. However, at the same time Defendant was filing speedy trial motions, he was challenging the representation provided by his counsel by filing motions to appoint substitute counsel or to represent himself, and he and counsel were asking for continuances claiming that he and/or his counsel needed additional time before trial.

{54}    Defendant's actions in contributing to the delay and being unready for trial while simultaneously asserting his speedy trial right lead us to give little weight to Defendant's assertions of his speedy trial rights. *See State v. Coffin*, 1999-NMSC-038, ¶ 67, 128 N.M. 192, 991 P.2d 477 (observing that the defendant's assertion of his speedy trial right was not meaningful when he objected to the rule extension but also represented that he was not prepared for trial); *cf. United States v. Loud Hawk*, 474 U.S. 302, 314-15 (1986) (according little weight to the defendants' repeated motions to dismiss on speedy trial grounds because at the same time the defendants consumed the district court's time by filing "repetitive and unsuccessful motions"); *Garza*, 2009-NMSC-038, ¶ 32 (stating that the force of a defendant's assertion of his speedy trial right will be mitigated when the motion asserting the speedy trial right is followed closely by other motions that would slow down the proceedings). It is inconsistent for Defendant to object to continuances and to assert his speedy trial rights, while he is simultaneously objecting to his attorney's representation, requesting substitute counsel, and claiming that he or his attorney needs additional time to prepare. *See Coffin*, 1999-NMSC-038, ¶ 67; *cf. United States v. Tranakos,* 911 F.2d 1422, 1429 (10th Cir. 1990) ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire.").

{55}    Finally, to the extent Defendant filed speedy trial motions after the first trial ended

12

in a mistrial while his counsel was simultaneously stating he could not immediately proceed with retrial, we accord those assertions little to no weight. *See Tranakos,* 911 F.2d at 1429; *Coffin,* 1999-NMSC-038, ¶ 67. Based upon the foregoing, this factor weighs in Defendant's favor, but only slightly.

**Prejudice**

**{56}** "The United States Supreme Court has identified three interests under which we analyze prejudice to the defendant: [(1)] to prevent oppressive pretrial incarceration; [(2)] to minimize anxiety and concern of the accused; and [(3)] to limit the possibility that the defense will be impaired." *Garza,* 2009-NMSC-038, ¶ 35 (internal quotation marks and citation omitted). As to the first and second interests, "some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial." *Id.* (alterations, internal quotation marks, and citation omitted). "Therefore, we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Id.* It is Defendant's burden to demonstrate and substantiate any alleged "undue" oppressive pretrial incarceration and anxiety. *Id.* ¶¶ 35, 39-40.

**{57}** Defendant argues that his incarceration was especially oppressive because he was housed in segregation for almost the entire fifty-five months of incarceration. He also claims he suffered "from the anxiety and concern one would expect from someone housed under such conditions while facing extremely serious charges[.]" He cites to his testimony about the mental and physical toll the ordeal took on him and the medications he was prescribed to endure it. He then concludes that the prejudice prong "unquestionably weighs *heavily* in his favor."

**{58}** We first consider whether Defendant suffered undue prejudice because he was incarcerated in solitary confinement for the entire fifty-five-month period awaiting trial, noting that Defendant did not, or could not, post bond which led him to be incarcerated during the entire period. Bond was set at $250,000, cash only, due to allegations that Defendant had threatened Vanessa and her family and allegations that Defendant had tried to get Vanessa's brother to kill her. Moreover, solitary confinement was necessary for Defendant's own safety. Given these circumstances, we cannot conclude that Defendant has demonstrated any particularized or undue prejudice due to his incarceration. *Cf. State v. Wilson,* 2010-NMCA-018, ¶ 48, 147 N.M. 706, 228 P.3d 490 ("Some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial.").

**{59}** Defendant also argues that the pretrial delay impaired his defense, the most serious type of prejudice. *See Garza,* 2009-NMSC-038, ¶ 36 (stating that prejudice to a defendant's ability to present a defense is the "most serious," but the defendant must still substantiate this type of prejudice (internal quotation marks and citation omitted)). Defendant claims that his defense was prejudiced by the death of a potential witness, Aaron Chavez, on April 17, 2006. Chavez was allegedly having an affair with Defendant's wife, and Defendant claims he would have testified that Vanessa and her mother fabricated the charges against him.

13

**{60}** The district court found that Chavez's potential testimony was wholly speculative, that despite its alleged importance, Defendant made no effort to interview Chavez or to memorialize his testimony, and that the State, not Defendant, might possibly have benefitted from the testimony. Thus, we agree with the district court's conclusion that Defendant has failed to demonstrate that Chavez's testimony would have assisted him. *See Coffin*, 1999-NMSC-038, ¶ 71 (observing that, in order to show prejudice resulting from the unavailability of a witness, the defendant must demonstrate that the witness's testimony would have benefitted the defense). Moreover, it is impossible to determine whether the lapse of time and the fading of memories of witnesses might have prejudiced the State as much as Defendant. *Cf. Garza*, 2009-NMSC-038, ¶ 36 (requiring a defendant to substantiate any prejudice to his defense caused by the delay). Based on the foregoing, the prejudice factor weighs neutrally.

**Balancing**

**{61}** The length of delay weighs heavily in favor of Defendant. The reasons for the delay, on balance, weigh against Defendant. The assertion of the right weighs in Defendant's favor, but minimally given his competing requests for continuances and delays. Finally, Defendant failed to demonstrate that he suffered any type of significant or individualized prejudice. Under these circumstances, we reject Defendant's assertion that his right to a speedy trial was violated. See *id.* ¶ 40 (concluding that, because the defendant failed to show prejudice, and the remaining factors did not weigh heavily in his favor, the defendant's right to a speedy trial was not violated).

**{62}** We note that the delay in this case was significantly longer than what should be customary. We recognize that the district court may have been justified had it decided to deny some of Defendant's requests to replace his attorney or some of the attorneys' requests for a continuance to enable additional trial preparation. *Cf. State v. Salazar*, 2006-NMCA-066, ¶¶ 26-27, 139 N.M. 603, 136 P.3d 1013 (holding that it was not an abuse of discretion for the district court to deny the fifth motion to continue a week before trial when four prior continuances had been granted resulting in eight months of delay before trial). However, we decline to hold that the district court violated Defendant's speedy trial rights when, in the interest of ensuring that Defendant was given every opportunity to obtain the counsel of his choice and ensuring that his chosen counsel had adequate time to prepare for trial, the court granted Defendant significant leeway and every opportunity to prepare an adequate defense.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

**{63}** Defendant contends that, if we do not conclude that his right to a speedy trial was violated, we should nonetheless conclude that his eight attorneys were "individually and cumulatively ineffective." We disagree.

**{64}** "To make a prima facie case [of ineffective assistance of counsel, the d]efendant has the burden of proving (1) that counsel's performance fell below that of a reasonably

14

competent attorney and (2) that [the d]efendant was prejudiced by the deficient performance." *State v. Martinez*, 2007-NMCA-160, ¶ 19, 143 N.M. 96, 173 P.3d 18. "With respect to the showing that counsel's deficient performance prejudiced the defense, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 27, 130 N.M. 198, 22 P.3d 666 (alteration, internal quotation marks, and citation omitted).

**{65}** Defendant has failed to identify any deficiencies on the part of any of his attorneys that prejudiced his defense; he merely claims that the long delay to trial must be a product of his attorneys' ineffectiveness. As discussed at length in analyzing Defendant's speedy trial claim, Defendant questioned the performance of all of his attorneys who remained on his case for any significant portion of time. Despite Defendant's questioning and criticism, the record indicates that, while the district court occasionally found that relations between counsel and Defendant had irretrievably broken down, it made no findings that any deficiencies of the attorneys were the cause of the conflict. Instead, it appears that the conflict was due to Defendant's dissatisfaction with his attorneys' strategic decisions to prepare for trial, instead of to continuously pursue Defendant's speedy trial claims. We are not convinced that such defense tactics constitute ineffective assistance. *See id.* ¶ 43 ("On appeal, we will not second guess the trial strategy and tactics of the defense counsel." (internal quotation marks and citation omitted)). Finally, Defendant has failed to make any showing, much less a showing to a reasonable probability, that, but for the alleged errors of his attorneys, the result of his trial would have been different. *See id.* ¶ 27.

**CONCLUSION**

**{66}** For the reasons stated above, we affirm Defendant's convictions.

**{67}** IT IS SO ORDERED.

_____
JAMES J. WECHSLER, Judge

WE CONCUR:

_____
CELIA FOY CASTILLO, Chief Judge

_____
JONATHAN B. SUTIN, Judge

**Topic Index for *State v. Fierro*, Docket No. 29,538**

**AE      APPEAL AND ERROR**

15

AE-PJ   Prejudicial Error

**AT      ATTORNEYS**
AT-EA  Effective Assistance of Counsel

**CT      CONSTITUTIONAL LAW**
CT-ST  Speedy Trial

**CL      CRIMINAL LAW**
CL-CP  Criminal Sexual Penetration
CL-BR  Bribery
CL-SE  Sexual Exploitation of Children
CL-SX  Sexual Offences
CL-WI  Witness Intimidation

**CA      CRIMINAL PROCEDURE**
CA-PJ  Prejudice
CA-SP  Speedy Trial