This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36535**

**STATE OF NEW MEXICO,**

   Plaintiff-Appellee,

v.

**WENDELL GUNTHORPE,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Judge**

Hector H. Balderas, Attorney General
Benjamin Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**   Defendant Wendell Gunthorpe appeals his convictions for aggravated battery, contrary to NMSA 1978, Section 30-3-5(C) (1969); aggravated assault, contrary to NMSA 1978, Section 30-3-2(B) (1963); battery against a household member, contrary to NMSA 1978, Section 30-3-15(A) (2008); and violation of a protective order, contrary to NMSA 1978, Section 40-13-6 (2013). He argues that (1) his speedy trial rights were violated by the delay in this case; (2) his trial counsel was ineffective for failing to investigate a potential alibi; (3) there is insufficient evidence to support his convictions;

and (4) Defendant's Fifth Amendment rights were violated because he was not read his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). We affirm.

**DISCUSSION**

**I. Speedy Trial**

**{2}** "The right of the accused to a speedy trial is guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution." *State v. Spearman*, 2012-NMSC-023, ¶ 16, 283 P.3d 272. In determining whether a defendant has been deprived of the right to a speedy trial, "we consider the four factors articulated in *Barker* [*v. Wingo*, 407 U.S. 514 (1972)]: (1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. "We defer to the district court's factual findings in considering a speedy trial claim, but weigh each factor de novo." *State v. Ochoa*, 2017-NMSC-031, ¶ 4, 406 P.3d 505.

**A. Length of Delay**

**{3}** We first determine whether the length of the delay is presumptively prejudicial. "The first factor, the length of delay, has a dual function: it acts as a triggering mechanism for considering the four *Barker* factors if the delay crosses the threshold of being presumptively prejudicial, and it is an independent factor to consider in evaluating whether a speedy trial violation has occurred." *Serros*, 2016-NMSC-008, ¶ 22 (internal quotation marks and citation omitted). Our Supreme Court has established benchmarks for presumptively prejudicial delay according to the complexity of a case: twelve months for a simple case, fifteen months for a case of intermediate complexity, and eighteen months for a complex case. *State v. Garza*, 2009-NMSC-038, ¶¶ 47-48, 146 N.M. 499, 212 P.3d 387. The weight we assign this factor varies with the length of the delay–"[a]s the delay lengthens, it weighs increasingly in favor of the accused." *Ochoa*, 2017-NMSC-031, ¶ 14.

**{4}** The district court determined this case to be of intermediate complexity, and we defer to such a finding on appeal. *See id.* ¶ 15 (noting that the appellate courts defer to the district court's findings of complexity when the finding is supported in the record). Accordingly, the presumptive period for this "intermediate" case to be brought to trial is fifteen months. *See Garza*, 2009-NMSC-038, ¶ 2. Defendant asserts that there has been a forty-three-month delay in this case, while the State asserts that the amount of delay continues to Defendant's second trial setting for a total of forty-five months. It is unnecessary to resolve this conflict as a forty-three month delay is more than double the presumptive period necessary to trigger further inquiry into the *Barker* factors and weighs heavily in favor of Defendant. *See State v. Taylor*, 2015-NMCA-012, ¶ 9, 343 P.3d 199 (weighing a length of delay approximately twice as long as the presumptively prejudicial threshold, heavily against the state); *State v. Vigil-Giron*, 2014-NMCA-069, ¶¶ 19, 65, 327 P.3d 1129 (same).

**B.      Reasons for Delay**

**{5}**      The second *Barker* factor evaluates the reasons for each period of delay and assigns responsibility for each period accordingly. *See Garza,* 2009-NMSC-038, ¶ 25. "Our courts have recognized three types of delay that may be attributable to the state and one type attributable to the defense." *State v. Brown*, 2017-NMCA-046, ¶ 18, 396 P.3d 171. First, intentional delay, which is "a deliberate attempt to delay prosecution of the case in order to hamper the defense." *Id.* Intentional delay weighs heavily against the state. *See id.* The second type of delay is negligent or administrative, which also weighs against the state because "it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun[,]" but it does so more lightly than intentional delay. *Id.* (internal quotation marks and citation omitted). "[A]s the length of the delay increases, this type of delay begins to weigh more heavily against the state." *Id.* Third is delay caused by valid reasons, which "are neutral and do not weigh against the state." *Id.* Finally, any delay caused by the defendant generally weighs against the defendant. *See id.*

**{6}**      We identify eight periods of pretrial delay in this case: (1) from December 25, 2011 to July 18, 2012; (2) from July 19, 2012 to July 2, 2013; (3) from July 3, 2013 to November 5, 2013; (4) from November 6, 2013 to February 18, 2014; (5) from February 18, 2014 to November 4, 2014; (6) from November 5, 2014 to February 2, 2015; (7) from February 3, 2015 to August 26, 2015; and (9) from August 27, 2015 to October 26, 2015. We address each time period in turn.

**December 25, 2011 to July 18, 2012**

**{7}**      During the first time period, the State and Defendant filed customary pleadings one expects to see filed in a criminal case. The State filed a certificate of disclosure, a demand for notice of alibi or entrapment defense, a request for disclosure, a notice of intent to call witnesses, a motion to compel Defendant to select counsel and request for a prompt trial setting, and an amended witness list. The New Mexico Public Defender Department entered its appearance on Defendant's behalf, moved for discovery, and asserted a speedy trial demand. In addition, the district court scheduled a status conference, pre-trial conference, and an August 20, 2012, jury trial. We therefore agree with the district court that the case was progressing normally until July 18, 2012, when defense counsel filed a stipulated order for stay to determine Defendant's competency and weigh this period of six months and twenty three days neutrally. *See State v. Parrish*, 2011-NMCA-033, ¶ 25, 149 N.M. 506, 252 P.3d 730 (weighing the delay neutrally when "the case progressed with customary promptness"). To the extent Defendant claims this period of time should be weighed against the State, he provides no explanation supporting this claim and the authority he cites does not support this assertion. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (stating that appellate courts are under no obligation to review unclear or undeveloped arguments); *Vigil-Giron*, 2014-NMCA-069, ¶ 60 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists." ).

**July 19, 2012 to July 2, 2013**

**{8}** During this period Defendant underwent a competency evaluation and private counsel, Kelly A. Golightely, entered her appearance on behalf of Defendant. The district court entered an order finding Defendant competent to stand trial on July 2, 2013. Although the district court weighed this period neutrally, delays for the purpose of obtaining a competency evaluation are "clearly for the benefit of the defendant who cannot stand trial until the issue of competency has been properly assessed." *State v. Mendoza*, 1989-NMSC-032, ¶ 9, 108 N.M. 466, 774 P.2d 440. Therefore, we weigh this twelve-month period against Defendant.

**July 3, 2013 to November 5, 2013**

**{9}** On July 29, 2013, the district court scheduled trial for November 12, 2013, and placed the case on the November 5, 2013 docket call. On October 24, 2013, Defendant's attorney, Kelly A. Golightley, withdrew as counsel and Rachel Walker Al-Yasi entered her appearance on Defendant's behalf. Defendant's new counsel failed to appear for the November 5, 2013 docket call. Until the November docket call, the case was progressing normally. We therefore weigh this period of six months and twenty-three days neutrally. *See Parrish*, 2011-NMCA-033, ¶ 25.

**{10}** Though Defendant agrees that the case was proceeding normally during this time, he nonetheless contends that this time should be weighed against the State as administrative delay. Defendant offers no argument or authority in support of this contention. Thus we do not consider his argument further. *See Guerra*, 2012-NMSC-014, ¶ 21; *Vigil-Giron*, 2014-NMCA-069, ¶ 60.

**November 6, 2013 to February 18, 2014**

**{11}** Over the State's objection the district court vacated Defendant's November 12, 2013, jury trial because Defendant's counsel failed to appear for the docket call and would presumably be unprepared for trial. The State requested that a new trial date be set. On February 18, 2014, the State filed a motion for a definite trial setting. No trial settings occurred during this time period. The district court determined that three months would have been an acceptable time to set a new trial date and weighed three months against Defendant.

**{12}** Defendant concedes that part of the delay "was due to [his] counsel failing to show up for [the docket call]" but nonetheless contends that this period of time should weigh against the State. Generally delays caused by defense counsel are attributable to the defendant. *State v. Deans*, 2019-NMCA-015, ¶ 18, 435 P.3d 1280, *cert. denied*, 2019-NMCERT-___ (No. S-1-SC-37473 Feb. 14, 2019). But for defense counsel's failure to attend the docket call, Defendant would have proceeded to trial on November 12, 2013. We therefore apply the general rule and hold that the three-month period of delay caused by defense counsel weighs against Defendant.

**{13}**    Defendant contends that his counsel's failure to attend the docket call amounted to ineffective assistance of counsel and we should therefore apply *Serros*, where our Supreme Court declined to weigh periods of delay caused by significant attorney neglect against the defendant. 2016-NMSC-008, ¶¶ 44-67. The Supreme Court has limited the application of *Serros* to "situations where a defendant suffers extreme prejudice and is effectively blameless in the delay." *Deans*, 2019-NMCA-015, ¶ 18 (recognizing our Supreme Court's holding in *State v. Castro*, 2017-NMSC-027, ¶¶ 12-14, 402 P.3d 699).

**{14}**    We examine Defendant's claim of ineffective assistance of counsel as it is the basis for his claim that *Serros* applies. "In order to establish a prima facie case of ineffective assistance of counsel on direct appeal, a defendant must demonstrate that: (1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *State v. Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134. Defendant does not argue that his counsel's failure to appear for the docket call was prejudicial to his defense. We therefore conclude that Defendant's claim of ineffective assistance of counsel is without merit and decline to apply the *Serros* analysis to this period of delay.

### February 18, 2014 to November 4, 2014

**{15}**    The parties and district court appear to agree that the time period from February 18, 2014, to June 24, 2014, was delay caused by the initial trial judge's medical condition, which lead to his subsequent medical leave in June 2014. The district court considered this period to be negligent delay and weighed it lightly against the State. Under the unique circumstances of this case we agree that this period of delay weighs slightly against the State, but as administrative delay rather than negligent delay. *Brown*, 2017-NMCA-046, ¶ 26 (weighing period of delay "slightly against the State as administrative delay due to unavailability of the presiding judge due to illness and lack of any progress made by the court until a new judge was assigned.") Accordingly, we weigh the four-month and seven-day period of delay from February 18, 2014 to June 24, 2014, slightly against the State[1].

**{16}**    The case was reassigned to Judge Brett Loveless on July 24, 2014, who then scheduled trial for August 18, 2014. Defendant excused Judge Loveless on August 7, 2014, and the case was reassigned to Judge Chavez on August 21, 2014. Defendant concedes the case "proceeded normally" during this time but nonetheless argues that the delay resulting from his excusal of Judge Loveless to the reassignment to Judge

---

[1]We recognize our prior opinions have held that delays resulting from a judge's illness weigh neutrally. *See State v. Lopez*, 2009-NMCA-127, ¶ 25, 147 N.M. 364, 223 P.3d 361 (holding that the delay resulting in vacation of the scheduled trial on account of the judge's illness weighs neutrally); *State v. White*, 1994-NMCA-084, ¶ 5, 118 N.M. 225, 880 P.2d 322 (noting that a "judge's surgery and recovery time . . . does not weigh against either side" in a speedy trial analysis). The opinion in *Brown* did not apply or distinguish itself from *White* or *Lopez*. However we find the facts in *Brown*, wherein the judge's illness affected his ability to preside over the case and ultimately lead to his resignation, 2017-NMCA-046, ¶ 26, distinguishable from the delays in *White* or *Lopez*.

Chavez should weigh against the State as administrative delay. The State argues that this period of delay is attributable to Defendant and should not weigh against the State. Reassignment of judges following the medical leave of one judge and excusal of another demonstrates that the case was moving along with customary promptness. Therefore, we weigh the twenty-eight-day delay between the appointment of Judge Loveless to the appointment of Judge Chavez, neutrally. *Parrish*, 2011-NMCA-033, ¶ 25; *cf. State v. Gallegos*, 2010-NMCA-032, ¶¶ 16, 18, 148 N.M. 182, 231 P.3d 1124 (declining to hold a seven-month delay caused by the defendant's excusal of the assigned judge against the defendant).

**{17}** On August 27, 2014, the district court scheduled a change of plea hearing for November 4, 2014, demonstrating that the case was proceeding with customary promptness. However, the parties could not reach an agreement and informed the district court that a trial was necessary. We hold this two-month and fifteen-day period of time neutrally as the case was moving with customary promptness. *Parrish*, 2011-NMCA-033, ¶ 25.

**November 5, 2014 to February 2, 2015**

**{18}** Defendant's case was not scheduled for trial prior to the subsequent entry of LR2-400 NMRA (2014), which resulted in a February 2, 2015 order transferring the case from Judge Chavez to Judge Judith K. Nakamura. Both parties appear to concede that the district court was correct in weighing three months against the State as administrative delay for failure to seek a timely trial setting.

**{19}** Thus, we defer to the district court's determination regarding this three-month time period. *See Ochoa*, 2017-NMSC-031, ¶ 4; *State v. Marquez*, 2001-NMCA-062, ¶ 8, 130 N.M. 651, 29 P.3d 1052 ("It is primarily the responsibility of the [s]tate to bring a case to trial within a reasonable period of time.").

**February 3, 2015 to August 26, 2015**

**{20}** During this period defense counsel failed to appear at two settings—a status hearing scheduled in March 31, 2015, and a docket call scheduled on May 18, 2015. Relying again on *Serros* Defendant briefly argues that we should not weigh this period of time against him. We reiterate that *Serros* only applies to "situations where a defendant suffers extreme prejudice and is effectively blameless in the delay." *Deans*, 2019-NMCA-015, ¶ 18. Because Defendant again fails to articulate extreme prejudice, we conclude that the *Serros* analysis does not apply to this period of delay and weigh the approximately four months of delay resulting from these missed settings against Defendant. *See State v. Fierro*, 2012-NMCA-054, ¶ 40, 278 P.3d 541 ("[D]elays sought or caused by defense counsel are ordinarily attributed to the defendant[.]").

**{21}** Subsequently, Defendant's first trial commenced on June 15, 2015. The trial was vacated because, after a juror was dismissed for an emergency, there were not enough jurors to empanel a full jury. Defendant was then offered a new trial date but defense

counsel was unavailable at that time. Additionally, Defendant filed his speedy trial motion on July 31, 2015, and it was resolved by the court on August 26, 2015. We agree with Defendant that the delay caused by his declination of a trial date and time to resolve his speedy trial motion should be weighed against him. *See Brown*, 2017-NMCA-046, ¶ 18 (stating that delay caused by the defendant generally weighs against the defendant). We therefore weigh this period of approximately two months and twelve days against Defendant.

**August 27, 2015 to October 26, 2015**

**{22}** Finally, Defendant concedes that the final two months prior to his October 26, 2015 trial proceeded without event. Accordingly, we determine that this period was proceeding normally and weigh it neutrally. *See State v. Maddox*, 2008-NMSC-062, ¶ 27, 145 N.M. 242, 195 P.3d 1254 (weighing the period where the "case moved toward trial with customary promptness . . . . neutrally between the parties"), *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48.

**{23}** On balance, Defendant is responsible for approximately twenty-one months of delay; the State is responsible for approximately seven-months of delay; and an additional fourteen-months of delay resulted from valid reasons, which we weigh neutrally. Consequently, we weigh this factor against Defendant.

## C.     Assertion of the Right

**{24}** The third *Barker* factor analyzes the degree to which the defendant has asserted his right to a speedy trial. *Garza*, 2009-NMSC-038, ¶ 32. "Under this factor we accord weight to the frequency and force of the defendant's objections to the delay and analyze the defendant's actions with regard to the delay." *State v. Samora*, 2016-NMSC-031, ¶ 19, 387 P.3d 230 (alteration, internal quotation marks, and citation omitted). "[T]he timeliness and vigor with which the right is asserted may be considered as an indication of whether a defendant was denied needed access to speedy trial over his objection[.]" *Garza*, 2009-NMSC-038, ¶ 32.

**{25}** Defendant asserted his right to a speedy trial in two pro forma motions early on in the case, and again through his motion to dismiss made approximately one month prior to a trial setting. The district court weighed this factor slightly in Defendant's favor, if at all, based on its determination that the pro forma nature of the assertions considered in conjunction with an eleventh hour motion to dismiss and Defendant's own delay-inducing actions cut against the assertion of his speedy trial right. We agree with the district court and conclude that Defendant did not meaningfully assert his right to a speedy trial, especially considering the large portion of delay for which Defendant himself is responsible in the case. *See Samora*, 2016-NMSC-031, ¶ 20 (declining to weigh the assertion of the right factor in the defendant's favor where he made a pro forma assertion of the right, filed a last-minute speedy trial motion, and was responsible for seventeen months of the overall delay).

## D. Prejudice

**{26}** The final *Barker* factor requires us to look at the prejudice suffered by the defendant as a result of the delay. *See Ochoa*, 2017-NMSC-031, ¶ 48. This analysis focuses on three main interests sought to be protected by the speedy trial right: "[(1)] preventing oppressive pretrial incarceration, [(2)] minimizing anxiety and concern of the accused, and [(3)] limiting the possibility that the defense will be impaired." *Id.* (quoting *Barker*, 407 U.S. at 532). Generally, it is a defendant's burden to "make a particularized showing of prejudice to demonstrate a violation of any of the three interests[,]" *Samora*, 2016-NMSC-031, ¶ 21, but "this burden varies with the length of pretrial incarceration." *Ochoa*, 2017-NMSC-031, ¶ 52.

**{27}** The parties appear to agree with the district court's determination that Defendant failed to put on any evidence of particularized prejudice supporting his speedy trial claim. However, Defendant argues that under our Supreme Court's decision in *Ochoa*, sufficient prejudice was established by the fact that he was incarcerated prior to trial for more than forty-three months. "When, as in this case, a defendant was continuously incarcerated for an extended period of time, it requires no speculation to determine that the defendant suffered some prejudice." *Id.* ¶ 57. We, therefore, "presume that Defendant was prejudiced simply by being continuously incarcerated" because "[c]ontinuous pretrial incarceration is obviously oppressive to some degree, even in the absence of affirmative proof." *Id.* However, "absent affirmative proof, we can only speculate as to the specific circumstances of his incarceration" and "[i]n the absence of such proof, this factor does not tip the scale in Defendant's favor." *Id.* ¶¶ 60, 64.

## E. Balancing the *Barker* Factors

**{28}** While the length of delay weighs heavily in Defendant's favor, the prejudice factor weighs only slightly in Defendant's favor. Additionally, neither the reasons for delay nor the assertion of the right weigh in Defendant's favor. On balance, we conclude that Defendant's right to a speedy trial was not violated. *See Samora*, 2016-NMSC-031, ¶ 23 (concluding that the defendant's speedy trial rights were not violated where the sixty-two-month delay and reasons for delay weighed in the defendant's favor, but the assertion of the right factor did not, and the defendant failed to demonstrate any particularized prejudice); *Garza*, 2009-NMSC-038, ¶¶ 24, 30, 34, 40 (holding that the defendant's speedy trial rights were not violated when the first three factors weighed in his favor to some degree, but he failed to put on evidence of particularized prejudice).

## II. Ineffective Assistance of Counsel

**{29}** To establish a prima facie case of ineffective assistance of counsel, a defendant must demonstrate that: "(1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *Bahney*, 2012-NMCA-039, ¶ 48. On this record, Defendant has failed to meet his burden.

**{30}**   The totality of Defendant's argument regarding ineffective assistance consists of one sentence "[Defendant] contends that trial counsel failed to investigate his alibi defense." Such a bare bones assertion falls far short of establishing the necessary prima facie showing required to bring an effective assistance of counsel claim on direct appeal. *See Guerra*, 2012-NMSC-014, ¶ 21; *State v. Paredez*, 2004-NMSC-036, ¶ 22, 136 N.M. 533, 101 P.3d 799 ("[W]e have held when the record does not contain all the facts necessary for a full determination of the issue, an ineffective assistance of counsel claim is more properly brought through a habeas corpus petition[.]" (internal quotation marks and citation omitted)). Having failed to point to any facts of record supporting his claim, we conclude Defendant has not met his burden to establish ineffective assistance of counsel on direct appeal. This decision does not preclude Defendant's ability to pursue habeas corpus proceedings where he may develop the record with respect to his claim. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 44, 278 P.3d 517.

### III.    Sufficiency of the Evidence

**{31}**   "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{32}**   Defendant argues the evidence was insufficient to convict him of the crimes charged. Specifically, he argues that insufficient evidence was presented that he was the perpetrator. At trial, the jury heard testimony that, on Christmas Eve 2011, Gerald Bentley (Victim) was shot in the head with the arrow by a man in a Santa Claus suit and rubber face mask. Subsequently, testimony was presented that a scuffle ensued, and Victim removed the assailant's mask and identified Defendant as the shooter. The State also presented evidence that Defendant's DNA matched the DNA collected from the mask. Viewing this evidence in the light most favorable to the judgment, we conclude that sufficient evidence supports the jury's finding that Defendant was the perpetrator of the crimes.

**{33}**   Defendant also argues that there was insufficient evidence that the Victim suffered great bodily harm because no medical evidence was presented. Defendant fails to support this argument with any citation to authority. *See Vigil-Giron*, 2014-NMCA-069, ¶ 60. Moreover, authority from this Court contradicts Defendant's blanket assertion that medical evidence was required. In *State v. Armijo*, this Court dismissed a similar contention, concluding that the medical evidence was not necessary to make an adequate showing of great bodily harm where there was no issue as to the causal connection between the offenses and the injuries. 1999-NMCA-087, ¶ 10, 127 N.M. 594, 985 P.2d 764. Here, testimony was presented that Victim was shot in the head with

an arrow from a crossbow, causing a compression fracture to his occipital bone, loss of a significant amount of blood, debilitating migraines, and development of a constant ringing in his ear. As Defendant has not argued that the arrow was not the cause of Victim's injuries, we conclude that medical testimony was not required to establish great bodily harm under the facts of this case.

## IV.    *Miranda* Warnings

**{34}**    Finally, Defendant argues that "when the police arrested him, they failed to inform him of his right to remain silent and to have counsel present for questioning, as required by *Miranda*." However, it is undisputed by the parties that Defendant was not subject to a custodial interrogation, and no statements made by Defendant were admitted into evidence at trial. Accordingly, *Miranda* does not apply to the instant facts, and thus Defendant has failed to establish error. *State v. Hernandez*, 2009-NMCA-096, ¶ 4, 147 N.M. 1, 216 P.3d 251 ("Case law provides that a *Miranda* warning is required when the suspect is interrogated and in custody.").

## CONCLUSION

**{35}**    For the foregoing reasons, we affirm.

**{36}    IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**BRIANA H. ZAMORA, Judge**