Certiorari Denied, June 17, 2014, No. 34,712

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMCA-070

Filing Date: April 17, 2014

Docket No. 32,732

STATE OF NEW MEXICO,

      Plaintiff-Appellant,

v.

BRYAN JAMES STEINMETZ,

      Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Reed S. Sheppard, District Judge

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellant

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellee

OPINION

SUTIN, Judge.

{1}    On April 30, 2009, Defendant Bryan James Steinmetz was indicted on counts of criminal sexual penetration of a child, criminal sexual contact of a minor, kidnapping, bribery, and child abuse relating to allegations that he sexually abused his daughter during the period of November 2006 through November 2008 when she was six to seven years old.

1

On January 4, 2013, following a hearing on Defendant's motion to dismiss for a violation of his right to a speedy trial, the court entered an order of dismissal of the case on speedy trial grounds. The State appeals from the order of dismissal. We conclude Defendant's right to a speedy trial was not violated, and we reverse the district court's order of dismissal.

## BACKGROUND

**{2}**     Necessary and relevant factual and procedural details are provided throughout the discussion.

## Standard of Review

**{3}**     Under the Sixth Amendment to the United States Constitution, a person who is accused of a crime has a fundamental right to a speedy trial. *State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387. At the heart of this right is "preventing prejudice to the accused." *Id.* ¶ 12. In effect, the right is intended "to prevent oppressive pretrial incarceration[,] . . . to minimize anxiety . . . of the accused[,] and . . . to limit the possibility that the defense will be impaired." *State v. Spearman*, 2012-NMSC-023, ¶ 34, 283 P.3d 272 (internal quotation marks and citation omitted); *Garza*, 2009-NMSC-038, ¶ 12.

**{4}**     Determining whether a defendant's speedy trial right has been violated requires a review of the particular circumstances of each case, including consideration of the conduct of the prosecution, that of the defendant, and "the harm to the defendant from the delay." *Garza*, 2009-NMSC-038, ¶ 13. Our analysis in this regard is guided by considering four factors: "(1) the length of delay[;] (2) the reasons for the delay[;] (3) the defendant's assertion of his right[;] and (4) the actual prejudice to the defendant that, on balance, determines whether a defendant's right to a speedy trial has been violated." *Id.* (internal quotation marks and citation omitted)). On appeal from an order of dismissal for a violation of a defendant's right to a speedy trial, the appellate courts review the speedy trial factors de novo. *Spearman*, 2012-NMSC-023, ¶ 19.

## The Length of the Delay

**{5}**     "The length of delay serves two purposes under the speedy trial analysis." *Id.* ¶ 20. On the one hand, it triggers an analysis of the speedy trial factors; and on the other hand it is, itself, a speedy trial factor to be weighed in the balance. *Id.* The speedy trial analysis in the present case was triggered by the passage of approximately forty-three months from the date that Defendant was indicted to the date of the evidentiary hearing on his motion to dismiss for a speedy trial violation. The district court found, and the parties do not disagree, that the case was of intermediate complexity; we will defer to the court's determination in this regard. *See State v. Plouse*, 2003-NMCA-048, ¶ 42, 133 N.M. 495, 64 P.3d 522 ("We give due deference to the district court's findings as to the level of complexity."); *see also Garza*, 2009-NMSC-038, ¶ 2 (updating the "guidelines for determining the length of delay necessary to trigger the speedy trial inquiry"). Thus, the delay in this case exceeded the

2

speedy trial analysis triggering time of fifteen months by approximately twenty-eight months. *See Garza*, 2009-NMSC-038, ¶ 2 (stating that the length of delay necessary to trigger a speedy trial inquiry is fifteen months for intermediate cases).

**{6}**      In terms of the weight given to the length of the delay, "the greater the delay[,] the more heavily it will potentially weigh against the [prosecution]." *Id.* ¶ 24.  In the present case, based on the passage of an additional twenty-eight months beyond the triggering date, the district court found that the length of the delay weighed heavily against the State, but the State contends that the court erred in this finding.  Although we agree with the court's determination that the length of the delay weighs against the prosecution, we disagree with its determination that it does so heavily.  *See id.* (recognizing that a delay beyond the date of presumptive prejudice weighs against the prosecution, but its weight correlates to its length).  In *State v. Montoya*, this Court held that a delay of six months beyond the triggering date in an intermediate case weighed only slightly against the prosecution.  2011-NMCA-074, ¶ 17, 150 N.M. 415, 259 P.3d 820.  In contrast, in *Garza*, our Supreme Court recognized that a delay of five or more years weighed heavily in the defendant's favor.  2009-NMSC-038, ¶ 24.  Here, the delay of twenty-eight months beyond the date of presumptive prejudice, being significantly longer than the six-month delay in *Montoya*, but significantly shorter than the five to six years discussed in *Garza*, weighs moderately against the State and in Defendant's favor.  *See Garza*, 2009-NMSC-038, ¶ 24 (recognizing that a delay of three years and nine months "was too short to weigh heavily in the defendant's favor").

**The Reasons for the Delay**

**{7}**      "Closely related to [the] length of delay is the reason the government assigns to justify the delay." *Id.* ¶ 25 (internal quotation marks and citation omitted).  A deliberate or bad faith attempt to delay the trial with the goal of hindering the defense will weigh heavily against the prosecution, whereas delay caused by a valid reason, such as a missing witness or time spent opposing the defendant's pretrial motions, is both inevitable and wholly justifiable. *Id.* ¶¶ 25, 27.  In the middle of this spectrum is "negligent or administrative delay," which is delay caused, for example, by overcrowded courts, the reassignment of judges, or governmental negligence. *Id.* ¶¶ 26, 29.  Negligent or administrative delay is weighed against the prosecution because "the ultimate responsibility for such circumstances . . . rest[s] with [the] government rather than with the defendant[.]" *Spearman*, 2012-NMSC-023, ¶ 25 (internal quotation marks and citation omitted).  "The degree of weight we assign against the [prosecution] for negligent delay is closely related to the length of [the] delay"; the longer the delay, or the greater the threat to the fairness to the defendant, the less tolerant we are of the delay. *Garza*, 2009-NMSC-038, ¶ 26.

**{8}**      In analyzing the reasons for the delay in this case, the district court examined the period from April 30, 2009, the date of Defendant's indictment, to November 19, 2012, the date on which the fourth in a series of four assistant district attorneys entered his appearance on behalf of the State.  The district court divided the delay into ten periods of time and

3

ultimately concluded that twenty-five months of the delay weighed against the State, thirteen months weighed neutrally, and three months weighed against Defendant. The State argues that Defendant was responsible for thirty-six months of the delay and that the court erred in ruling otherwise. We review the reasons for the delay in this case using the district court's ten time periods as a framework.

### 1.    April 30, 2009, to June 21, 2009

{9}    The court's first time frame was the approximate two months between Defendant's indictment on April 30, 2009, until the State's entry of appearance on June 21, 2009. Without explaining its reasoning for doing so, the court concluded that this time frame weighed against the State. Although one possible explanation for the court's weighing assignment is that it viewed the State as somehow dilatory in entering its appearance, we note that Defendant's counsel did not enter his appearance until July 9, 2009, approximately two weeks after the State's entry. Because counsel for Defendant entered his appearance after the State, we conclude that the State's ostensibly late entry did not cause a delay in the progress of the case. Rather, we view this series of events—the indictment, followed by the State's and then defense counsel's entries of appearance—to indicate that from April 30, 2009, to July 9, 2009, the case was moving along with customary promptness, to be weighed neutrally. *See State v. Moreno*, 2010-NMCA-044, ¶ 13, 148 N.M. 253, 233 P.3d 782 (stating that when a case proceeds "with customary promptness[, the] delay cannot be held against either party").

### 2.    July 10, 2009, to January 12, 2010

{10}    Although the district court did not delineate the exact date on which its second time frame began, we have concluded that the first time frame may reasonably be viewed as having ended on July 9, 2009, when Defendant's first counsel entered his appearance. Thus, we view the second time frame as extending from July 10, 2009, to January 12, 2010, when Defendant's second counsel entered his appearance. Although the district court characterized this approximate six-month time frame as "negligent delay" and weighed it against the State, the court's factual findings are inconsistent with its conclusion.

{11}    The court found that between July 2009 and January 12, 2010, "Defendant's counsel failed to attend at least three [pretrial] conferences, failed to return Defendant's calls, and did not appear for a scheduled meeting with Defendant." The court also found that Defendant's counsel was permitted to withdraw his representation on December 7, 2009, and as noted, Defendant's second counsel entered his appearance on January 12, 2010.

{12}    The court further found that "[t]he State apparently did nothing to advance the case against Defendant between August 2009[] and January 12, 2010, except to file a motion to extend time [on November 2, 2009,] which was granted" on November 4, 2009. *See* Rule 5-604(B)(1) NMRA (2010, prior to March 23, 2011, amendment) (requiring the commencement of a trial six months after the waiver of arraignment in district court). Yet

4

the record reflects that in July and August 2009, the State filed its demand for a notice of intention to claim alibi and/or entrapment, filed a certificate of disclosure stating that all of the information in the district attorney file was disclosed to the defense, filed a request that the defense disclose the evidence and witnesses it intended to use at trial, and made two evidentiary disclosures to the defense.

**{13}** Based on the foregoing, we disagree with the court's conclusion that the July 10, 2009, to January 12, 2010, time frame weighed against the State in the speedy trial analysis. The documents filed by the State in July and August 2009 reflect that it was actively preparing for trial during those months. Further, we do not conclude that the State's November 2, 2009, motion for an extension of time, to which Defendant did not object, caused a delay in this case. Rather, it appears that the motion and the court's order granting it were required to effect technical compliance with the 2009 version of Rule 5-604(B) that required criminal cases to be tried within six months of arraignment or waiver of arraignment.

**{14}** On the other hand, Defendant's issues with his counsel, which were discussed to some degree at a November 2, 2009, status conference, his counsel's failures, recognized by the court in its speedy trial order, and the process of finding new counsel to represent Defendant, can reasonably be viewed as causing or contributing to the delay during this second time frame. To that end, we observe that Defendant filed a pro se motion on October 13, 2009, requesting to withdraw his counsel, attempting to "substitute[] in and enter[] his appearance [pro se]," and indicating that his counsel had not been "authorized to act on Defendant's behalf since September [3], 2009." The court did not rule on this motion until December 7, 2009, when it entered an order allowing Defendant's counsel to withdraw. And, as we have already noted, substitute defense counsel entered his appearance on January 12, 2010.

**{15}** In light of the foregoing circumstances, we disagree with the district court's decision to weigh the approximate six-month time frame from July 10, 2009, to January 12, 2010, against the State. The record reflects that although the State appears during this time frame to have been doing its part to move the case toward trial, the failures of Defendant's counsel and issues between Defendant and his counsel delayed that progress. Thus, contrary to the district court's order, we weigh this time frame against Defendant. *See State v. Fierro*, 2012-NMCA-054, ¶ 40, 278 P.3d 541 (recognizing that delay caused by defense counsel should be weighed against the defendant).

### 3. January 12, 2010, to June 13, 2010

**{16}** The district court weighed the five months from January 12, 2010, to June 13, 2010, against the State, reasoning that "[d]uring this period of time, another assistant district attorney was assigned to the case and, other than filing her appearance, the State failed to proceed forward except for filing another [p]etition to [e]xtend [t]ime." The State attacks the court's finding, pointing to evidence in the record that, it argues, demonstrates that with

the exception of twenty-seven days that should be characterized as administrative delay, the State attempted to move the case toward trial.

**{17}** The record does not reflect any activity by either party between January 12, 2010, when Defendant's second counsel entered his appearance and February 7, 2010; however, at a February 11, 2010, hearing, Defendant advised the court that he had spoken with his new counsel on January 21, 2010. On February 8, 2010, the State filed three documents: a demand for notice of intention to claim alibi and/or entrapment, a certificate of disclosure of information, and a request for disclosure. Except for reflecting the name of Defendant's new counsel, these documents were identical to those filed by the State in July 2009.

**{18}** On February 11, 2010, the court held a status hearing at which the State was represented by counsel, but Defendant appeared without his attorney. At this hearing, the court confirmed that issues in getting an attorney to represent Defendant had been resolved, and the court stated that it would set a hearing thirty days later to allow Defendant and his attorney, who was new to the case, to "have a better understanding and knowledge of the case." Defendant told the court that he had received "the basic discovery," but had yet to receive any interview tapes. The court indicated that the State had provided a "speed letter to obtain other discovery that [defense counsel] may request or require"; and that Defendant's counsel could discuss the matter of the tapes with the prosecutor. On February 18, 2010, the State filed a stipulated order for the protection of the privacy of child victims and witnesses.

**{19}** On March 18, 2010, the court held a status hearing, at which Defendant and his counsel were present, but the State failed to appear, apparently because the prosecutor who was assigned to the case had left the division. At this hearing, defense counsel advised the court that he had received discovery, but that he had yet to do witness interviews because he had been involved in a time-consuming trial and was "just getting around to" setting up the interviews, but there was no prosecutor to facilitate the interviews. At this hearing, the court set a trial date of August 2, 2010. On April 9, 2010, the district court entered a notice of hearing, pretrial scheduling, and direction order indicating, among other things, that trial was set for August 2, 2010.

**{20}** On April 14, 2010, the State filed an entry of appearance by substitute counsel, indicating that the State was aware of the pending hearings and was "ready to proceed without delay[.]" On May 10, 2010, the State filed a Rule 5-604 petition stating, in relevant part, that the then-current Rule 5-604 date in the case was May 11, 2010, and that a Rule 5-604 extension was required so as to encompass the August 2, 2010, trial date. Defendant's opposition to the extension was acknowledged in the State's motion. On May 13, 2010, the court entered an order granting the Rule 5-604 extension.

**{21}** On May 26, 2010, thirteen days after the court granted the Rule 5-604 extension, Defendant filed a pro se motion entitled "memorandum in opposition to plaintiff's Rule 5-604 petition." Defendant's memorandum addressed not only his objection to the Rule 5-604

6

extension, but it also attacked the validity of the grand jury hearing and indictment, among other things. Although Defendant filed this motion pro se, the record does not reflect that his counsel had withdrawn from the case or that the court had ordered that it was permissible for Defendant to represent himself in this matter.

**{22}** Based on the foregoing, we cannot agree with the district court's decision to weigh the entire five-month time period against the State. Based on the record, we conclude that from January 12, 2010, through March 17, 2010, Defendant's new counsel was familiarizing himself with the case and receiving discovery from the State. The district court shared this view, as reflected by its aforementioned comments at the February 11, 2010, status hearing at which it gave defense counsel an additional thirty days to do so. Throughout this period, the record reflects that the State was, for a second time, providing discovery to Defendant's counsel, thus facilitating movement of the case toward trial.

**{23}** We conclude that to the extent that there was a delay during this approximate two-month time frame, it was the result of Defendant having substituted his counsel, thus requiring time for Defendant's new counsel to become familiar with the case. This delay weighs against Defendant accordingly. *See Fierro*, 2012-NMCA-054, ¶ 40.

**{24}** The approximate one-month period between March 18, 2010, when the State failed to appear for a status hearing until April 14, 2010, when a new prosecutor entered her appearance and indicated that the State was ready to proceed without delay, weighs against the State, but not heavily. Nothing in the record indicates that the State intended to cause this delay; rather, the absence of a prosecutor was apparently the result of negligence or under-staffing at the district attorneys' office. *See Garza*, 2009-NMSC-038, ¶ 26 (stating that negligent or administrative delay should be weighed against the prosecution less heavily than intentional delay).

**{25}** The approximate two remaining months from April 14, 2010, to June 13, 2010, does not reflect any delay-causing activity by either party. We assume that during this period, each party was preparing for the August 2, 2010, trial date to which both the prosecutor and defense counsel had acquiesced. Although the State filed and the court granted a Rule 5-604 extension, we do not view this as causing a delay insofar as the extension merely effected technical compliance with Rule 5-604 by encompassing the August 2010 trial date. Accordingly, this approximate two-month time frame does not weigh against either party. *See Moreno*, 2010-NMCA-044, ¶ 13 (stating that when a case proceeds "with customary promptness[, the] delay cannot be held against either party").

**4.      June 14, 2010, to September 14, 2010**

**{26}** The district court weighed the three months between June 14, 2010, and September 14, 2010, against Defendant, reasoning that it stemmed "from Defendant's notice . . . [that] he would be undergoing back surgery and his request . . . to proceed pro se." Neither the State nor Defendant attack the court's conclusion in this regard, and therefore the court's

7

decision to weigh this three-month period against Defendant is conclusive. *See* Rule 12-213(A)(4) NMRA (stating that the appellant's argument "shall set forth a specific attack on any finding, or such finding shall be deemed conclusive"). Nevertheless, because it is relevant to our continuing analysis, we set out the following events that occurred during this time frame.

**{27}** On June 14, 2010, Defendant filed a motion, pro se, attempting, for a second time, to "substitute[] in and enter[] his appearance [pro se], and withdraw[]" his appointed counsel for what Defendant characterized as "ineffective representation" that "bordered on malpractice." On June 16, 2010, Defendant's counsel filed a motion to determine counsel, requesting that the court hear Defendant's motion "at the [c]ourt's earliest convenience because jury selection is set for August 2, 2010[.]" On July 20, 2010, the State filed a response to Defendant's request to appear pro se, stating its opposition thereto.

**{28}** On July 27, 2010, the court held a hearing on Defendant's motion to appear pro se, defense counsel's motion to determine counsel, and a motion filed pro se by Defendant to vacate the trial setting. At this hearing, the court granted Defendant's motion to vacate the trial setting and stated that the matter of Defendant acting pro se would be "taken under advisement[.]"

**{29}** At a hearing on September 14, 2010, the court announced its order allowing Defendant to represent himself, but with the exception that he would not be permitted to conduct witness interviews of the mother of the alleged victim, the alleged victim, or child witnesses. The court further ordered Defendant's second appointed counsel to remain in the case as standby counsel for Defendant and to conduct any interviews or examination of the witnesses that Defendant was prohibited from interviewing. After the court announced its order, Defendant requested that no hearings be set for at least three months beyond September 20, 2010, so that he could undergo and recover from a second back surgery[1]. The court stated, in response to Defendant's request, that nothing would be set during the fall of 2010.

## 5. September 15, 2010, to December 20, 2010

**{30}** The court weighed the approximate three-month time period between September 15, 2010, to December 20, 2010, against the State, reasoning that "nothing was filed by the State after Defendant had been granted the right to represent himself[.]" The court did not explain what the State was expected to, but failed to file, nor did it explain how that caused any delay in this case. In light of the court's September 14, 2010, order that nothing would be set during the fall, which was in response to Defendant's advice to the court that from September 20, 2010, and three months thereafter he would be recovering from back surgery,

---

[1]Defendant stated that he had back surgery on June 28, 2010, but he had "over extenuated" himself during his last court hearing, thereby necessitating a second surgery.

8

we cannot agree with the court's decision to weigh this time frame against the State.

**{31}** The approximate three-month delay from September 15, 2010, to December 20, 2010, almost precisely accounts for the delay in proceedings that Defendant requested for his recovery and weighs against Defendant accordingly. Additionally within this time frame, on December 16, 2010, Defendant filed a motion to disqualify his standby counsel because he was in the process of suing standby counsel and the office of the public defender. By initiating a lawsuit against his standby counsel and the office of the public defender, Defendant laid the groundwork for further delay, as will be discussed later in this Opinion.

**6.      December 20, 2010, to March 7, 2011**

**{32}** The court weighed the approximate two and one-half months between December 20, 2010, and March 7, 2011, neutrally, reasoning that the case was proceeding naturally during this period. The State argues that this time frame should, instead, weigh against Defendant owing to his objection to having standby counsel.

**{33}** As noted, Defendant filed a motion to disqualify standby counsel on December 16, 2010; his standby counsel filed a response on December 20, 2010, indicating that any lawsuit by Defendant against the public defender's office lacked merit and notifying the court that counsel had so advised Defendant. On January 14, 2011, Defendant filed an emergency motion to stay the court's order for standby counsel to conduct pretrial interviews, including a second motion to disqualify his standby counsel. On February 3, 2011, Defendant's standby counsel filed a motion requesting that the court permit him to withdraw as standby counsel; among other things, counsel stated in the motion that he had conducted pretrial interviews of the alleged victim and her mother and sister, but that he could not adequately defend himself in the civil lawsuit that Defendant had filed against him, individually, and against the office of the public defender while simultaneously counseling Defendant in a standby capacity. On March 7, 2011, the court held a hearing on this motion. Having heard from Defendant, standby counsel, and the State, the court granted standby counsel's motion to withdraw.

**{34}** We disagree with the district court's conclusion that the foregoing reflects that the case was proceeding naturally. To the contrary, Defendant's motions to disqualify his standby counsel, his motion to stay the witness interviews, and his decision to file a lawsuit against the public defender's office reflect a contentious relationship between Defendant and his court-appointed counsel, the resolution of which consumed this two-and-one-half-month time frame and stalled the progress of the defense's trial preparation. This delay weighs against Defendant accordingly. *See Fierro*, 2012-NMCA-054, ¶ 40 (recognizing that delays caused by new defense counsel's need to become familiar with the case weigh against the defendant).

**7.      March 7, 2011, to May 5, 2011**

**{35}** The district court weighed the approximate two-month delay spanning from March 7, 2011, to May 5, 2011, neutrally, reasoning that "[d]uring this period of time, the [c]ourt vacated a trial setting at the request of both parties because of discovery issues." The State argues that rather than weighing neutrally, this delay should have weighed against Defendant due to Defendant's failure to conduct pretrial witness interviews of the many State witnesses or any of the defense witnesses.

**{36}** On April 5, 2011, Defendant filed a notice of non-compliance, alleging, among other things, that the State was not in compliance with the rules of discovery, having failed to give him a list of its witnesses and their contact information, thereby precluding him from contacting the witnesses to arrange pretrial interviews. On April 6, 2011, Defendant filed a motion to dismiss the case against him on a number of grounds, including a violation of his right to a speedy trial. Also on April 6, 2011, Defendant filed a motion to vacate the trial setting of May 16, 2011, and the docket call of May 5, 2011, in which Defendant alleged, among other things, that the State failed to provide certain discovery and that he had been unable to conduct pretrial interviews due to the State's failure to provide contact information for the witnesses. On April 21, 2011, the court granted Defendant's motion to vacate the trial setting, noting in its order that the State had stipulated to the motion via e-mail.

**{37}** At a hearing on May 2, 2011, the district court heard arguments on the discovery and witness interview issues raised in Defendant's April motions. As to the discovery issues raised by Defendant in his motion to vacate, the State explained that the at-issue discovery had earlier been provided to the public defender's office, but that in light of Defendant's representation that his former counsel refused to provide Defendant with the discovery, the State offered to provide it again. As to the witness interview issues, the State argued that although it had attempted to schedule pretrial interviews with its expert witnesses, Defendant had declined to interview the witnesses for fewer than eight hours each and had made other demands that had resulted in a "stalemate" with Defendant. The court resolved the matter by ordering that Defendant would be permitted to interview the State's expert witnesses for two hours each.

**{38}** Unlike the district court, we conclude that the two-month time frame encompassing the foregoing events weighs against Defendant. While the district court's conclusion focused exclusively on the State's acquiescence in the vacatur of the May 16, 2011, trial setting, Defendant not only filed the motion to vacate, but he largely created the circumstances that necessitated it. *State v. Grissom*, 1987-NMCA-123, ¶ 34, 106 N.M. 555, 746 P.2d 661 (recognizing that "[d]elay arising from hearing [the] defendants' motions, not caused by the prosecution" is not weighed against the prosecution in a speedy trial analysis), *disagreed with on other grounds by Salandre v. State*, 1991-NMSC-016, 111 N.M. 422, 806 P.2d 562. To the extent that Defendant's motion to vacate was premised on the fact that he was missing discovery that his former counsel had refused to turn over to him, we see no reason, nor did Defendant provide a reason for Defendant having waited until April 5, 2011, to advise the court of the matter. Had Defendant been interested in moving his case toward trial promptly, it is reasonable to assume that when he was formally permitted to represent

himself on March 7, 2011, he would immediately have started to prepare for the May 16, 2011, trial by gathering and reviewing the necessary discovery. To the extent that Defendant's former counsel refused to provide him with that discovery, Defendant was free to request additional copies from the State or, alternatively, to request the court's intervention in the matter. To the extent that Defendant complained of his inability to interview the State's witnesses, the record shows that the witness interviews were delayed by Defendant's demands to have the interviews proceed under the peculiar circumstances that he dictated. In sum, the witness interview and discovery issues that arose between March 7, 2011, to May 5, 2011, were caused by Defendant's own actions and failures. This two-month delay weighs against Defendant accordingly. *See Fierro*, 2012-NMCA-054, ¶ 40.

## 8.  May 5, 2011, to February 10, 2012

**{39}**   The district court weighed the approximate nine months between May 5, 2011, and February 10, 2012, against the State, reasoning that during this time frame, the State failed to respond, until ordered to do so, to various motions filed by Defendant in June and July 2011. The State argues that the court erred in weighing this time frame against the State because Defendant's failure to interview a number of State witnesses or any of his seventy-three defense witnesses was the true cause of this delay, not the State's lack of responses to Defendant's motions.

**{40}**   The record reflects that between May 16, 2011, and June 24, 2011, Defendant filed six substantive motions, none of which requested dismissal of the case on speedy trial grounds and the contents of which are not relevant here. The State did not file written responses to these motions, nor did the court order the State to do so, and the State was not required by the Rules of Criminal Procedure to respond to Defendant's pretrial motions. *Cf.* Rule 5-601 NMRA (governing pretrial motions, but not stating any requirement that the non-movant file a written response).

**{41}**   On May 27, 2011, the court filed a scheduling order and notice of hearing setting trial to commence between the weeks of September 6, 2011, and September 12, 2011. On July 1, 2011, Defendant filed a second motion to dismiss. This motion was not premised on a deprivation of Defendant's right to a speedy trial; rather, it attacked the merits of the charges against him and included as attachments a number of documents filed in connection with a Children, Youth, and Families Department abuse and neglect case against Defendant and the alleged victim's mother.

**{42}**   On July 7, 2011, the court held a hearing at which the court had apparently intended to consider the merits of Defendant's first motion to dismiss, but, in light of Defendant's then-recently filed second motion to dismiss, the court declined to hear arguments pertaining to the first dismissal motion. Rather, the court heard and granted a motion filed by Defendant on June 24, 2011, to amend the conditions of release. In concluding the hearing, the court declined to address further motions filed by Defendant, and it advised the State to

11

be prepared, at a future hearing, to address all of the motions that Defendant had filed through July 1, 2011; but the court did not comment upon the State's failure to file written responses to Defendant's various motions filed during the months of May and June, nor, again, did it order the State to respond in writing to those motions.

**{43}** On July 13, 2011, the district court filed a notice of a motion hearing to be held on August 22, 2011, at which the court intended to hear all pending motions that had been filed through July 1, 2011. On July 21, 2011, Defendant requested that the August 22, 2011, motions hearing be reset because Defendant intended to be out of town on that date; the State concurred in the request. The order also included a handwritten clause vacating the September 2011 trial date; however, no reason for the vacation of the trial date was included in the record. The court approved of and filed this order on August 3, 2011.

**{44}** On November 15, 2011, the State filed a notice of substitution of counsel. On December 28, 2011, the district court held a status conference. The prosecutor advised the court that Defendant had yet to conduct four pretrial interviews of State witnesses; the State also requested a definite trial setting. The court stated that it would not "set anything more until [the prosecutor] and probably a supervisor" reviewed the Children, Youth, and Families Department case against Defendant and the alleged victim's mother and "decide[d] whether or not this matter's going to proceed to trial." The court further instructed the prosecutor that once the prosecution "had a chance to review the contents of the [Children, Youth, and Families Department case], contact my office if there's going to be any further settings, and I will take [Defendant's] [m]otion to [d]ismiss up at that time[.]"

**{45}** On February 10, 2012, the State filed a response to Defendant's second motion to dismiss, the contents of which pertained to the factual underpinnings of the charges against Defendant. The State's response to Defendant's motion once again sought a definite trial date for the resolution of this case.

**{46}** We are unable to conclude that the approximate nine-month time frame from May 5, 2011, to February 10, 2012, weighs against the State. The sole reason stated by the court for weighing this delay against the State was the State's failure to respond to "any of Defendant's motions until being ordered to respond" by the court. Given that the February 10, 2012, end-date of this time frame was the day on which the State filed its response to Defendant's second motion to dismiss, and given that the State did not respond in writing to any other of Defendant's June and July 2011 motions, we assume that the court's concern as to the State's lack of response to Defendant's motions was in regard to Defendant's second motion to dismiss. The record reflects that the court intended to hear Defendant's second motion to dismiss and all other pending motions at the August 22, 2011, hearing; however, the August 22, 2011, hearing was vacated at Defendant's request.

**{47}** The delay caused by the necessity of resolving Defendant's motions and the further delay caused by Defendant's request to vacate the hearing date weighs against Defendant. *Grissom*, 1987-NMCA-123, ¶ 34. Thus, the approximate seven and one-half months from

May 16, 2011, the date of Defendant's first motion within this time frame through December 28, 2011, when the court held a status conference, weighs against Defendant. Having filed a motion to vacate the August 2011 hearing, Defendant did not attempt to reschedule a hearing on his outstanding motions.

**{48}** At the December 28, 2011, status conference, the district court stated that it would delay further action in this case until the prosecutor and a supervisor considered the contents of Defendant's second motion to dismiss. In response to the court's order to do so, the State responded to the merits of Defendant's motion on February 10, 2012. Because this approximate six-week delay from December 28, 2011, to February 10, 2012, was essentially court-ordered, it weighs against the State. *Cf. Garza*, 2009-NMSC-038, ¶ 26 (stating that administrative delay caused by the court weighs against the prosecution).

### 9.    February 11, 2012, to June 26, 2012

**{49}** The district court weighed the four-month period of delay from February 11, 2012, to June 26, 2012, neutrally because during this time frame, the court disposed of Defendant's various motions and granted the State's motion to appoint Defendant counsel. The State disagrees with the court's decision to weigh this time frame neutrally, arguing that it should, instead, be weighed against Defendant due to Defendant's failure to prepare for trial.

**{50}** The district court held a motions hearing on February 14, 2012. Following that hearing, in a letter to counsel and Defendant dated February 28, 2012, the district court stated that it would take under advisement a motion filed by Defendant on June 24, 2011, requesting that his expert psychologist be allowed to examine the alleged victim and her mother and sister. The district court's letter instructed Defendant "to provide a copy of the [proposed expert's] CV. . . to the [c]ourt and the State ASAP." The court denied Defendant's remaining outstanding motions. On April 24, 2012, the district court issued a pretrial scheduling order reflecting a trial setting of August 13, 2012.

**{51}** On April 24, 2012, the district court held a hearing at which, among other things, it addressed issues surrounding Defendant's acquisition of an expert psychologist to examine the alleged victim and her mother and sister. At this hearing, Defendant advised the court that his proposed expert had advised him that she was not qualified to perform the interviews of the alleged victim and her mother and sister that Defendant requested. Defendant acknowledged that he should have advised the court of his expert witness issue earlier and excused his failure to do so on the basis that he had had "too many stressors[.]" Defendant also advised the court that he had been unable to issue necessary subpoenas because he did not know the procedure for doing so and that he had missed scheduled interviews with the State's witnesses because he had become ill, thus necessitating an extension of the deadline for completing witness interviews. The district court responded to Defendant's representations by stating that it had "grave concerns" about Defendant proceeding pro se in light of Defendant's apparent limitations in adequately preparing a defense.

13

**{52}** On May 1, 2012, the State filed a motion to compel the appointment of counsel for Defendant. Separately on May 1, 2012, the State filed a motion to vacate the August 13, 2012, trial date because it conflicted with another trial date to which the prosecutor was previously committed. On June 16, 2012, before the court ruled on the State's motion to vacate the August 13, 2012, trial date, Defendant filed his own motion to vacate that trial date. Also on June 16, 2012, Defendant filed a motion to dismiss on speedy trial grounds, as well as a response to the State's motion to compel appointment of defense counsel stating, among other things, that he lacked "the experience or the knowledge that it would take to properly present his innocence defense to a jury[,]" and requesting the court to appoint defense counsel. On June 25, 2012, the district court vacated the August 13, 2012, trial setting. On June 26, 2012, the district court entered an order appointing the public defender to represent Defendant.

**{53}** Notwithstanding the district court's having disposed of Defendant's outstanding motions, and notwithstanding the State's request for a continuance of the August 13, 2012, trial setting—facts which, under different circumstances, might cause the reasons for this delay to weigh against the State—under the circumstances of this case, we weigh this time frame against Defendant. While Defendant formally acknowledged that he could not proceed without counsel by virtue of his June 16, 2012, motion, it is obvious from the transcript of the April 24, 2012, hearing that Defendant was incapable of preparing for trial due to his lack of counsel and that he was aware of his limitations, but failed to advise the court of the issue until the State moved the court to appoint counsel for Defendant. Owing to this and to the other delay-causing factors that occurred during this February through June 2012 time frame, including Defendant's illness and his expert witness issue about which he failed to promptly advise the court, we weigh this approximate four-month time frame against Defendant.

### 10. June 27, 2012, to November 19, 2012

**{54}** The district court weighed the approximate four-month delay between June 27, 2012, to November 19, 2012, neutrally, reasoning that during this time frame, Defendant filed and the State responded to a motion to dismiss based on speedy trial grounds. The State argues that this period of delay weighs against Defendant because it was caused by Defendant's then-newly appointed counsel having to familiarize himself with the case.

**{55}** Defendant's fourth counsel entered his appearance on June 29, 2012. On July 19, 2012, the State filed a response to Defendant's June 16, 2012, motion to dismiss on speedy trial grounds. On September 5, 2012, the district court held a status conference. At this hearing, the court addressed the issue of Defendant's pro se speedy trial motion, which, by defense counsel's own admission, failed to establish prejudice to Defendant or State-caused delay. Defense counsel stated that he intended to write an addendum to the speedy trial motion and stated his further intention to request a speedy trial hearing. Rather than an addendum, the district court ordered that defense counsel should file an entirely new speedy trial motion.

14

**{56}** Defense counsel also moved at the September 5, 2012, hearing for permission to file a demand for a statement of facts. Although the State opposed this request on the ground that such a demand would be time-consuming and that the request was being made late in the case, and although the court noted that it was "very late in the game" to be making such a motion, the court granted defense counsel's request. Following the September 5, 2012, status conference, the district court entered an order setting motions deadlines, the latest of which was an October 19, 2012, deadline applicable to Defendant's reply to the State's response to Defendant's demand for a bill of particulars or statement of facts.

**{57}** On September 18, 2012, Defendant, through his counsel, filed a motion to dismiss on speedy trial grounds. The State filed its response on October 2, 2012. On October 24, 2012, the court held a status conference at which defense counsel requested and the district court granted a "one-month motion filing period" for defense counsel to review the case to "make sure there are no other issues" as to which defense motions should be filed. On November 19, 2012, the date on which the district court's tenth period of delay ended, the State filed a notice of substitution of counsel.

**{58}** We disagree with the district court's determination that the approximate four months between June 27, 2012, and November 19, 2012, weighs neutrally. During this time frame, Defendant's newly appointed counsel was familiarizing himself with this case, was caused to redraft Defendant's pro se motion to dismiss on speedy trial grounds, and was permitted by the court to file a demand for a bill of particulars or statement of facts that effectively resulted in a six-week delay from the time of the September 5, 2012, status conference—at which the court announced that it would permit such a demand through October 19, 2012—the final deadline applicable thereto. Additionally, at the October 24, 2012, status conference, defense counsel requested, and was granted, a one-month motions filing period to accommodate the possibility that in his continuing review of the case, he came across issues that required defense motions. This approximate four-month period weighs against Defendant accordingly. *See Fierro*, 2012-NMCA-054, ¶ 40.

**Reasons for the Delay Summary**

**{59}** In sum, having examined the reasons for the delay using the district court's framework, we conclude that the delay in this case was largely attributable to Defendant, who was responsible for a total of thirty-four months of the forty-three-month delay. Of the remaining months that were considered by the district court in its speedy trial analysis, we conclude that four weigh neutrally and two and one-half weigh against the State. Even assuming that the approximate two and one-half months that were omitted from the district court's reasons for the delay analysis weighed against the State, the reasons for the delay factor would nevertheless, on balance, weigh heavily against Defendant.

**The Assertion of the Right**

**{60}** The district court weighed the assertion of the right factor heavily in Defendant's

15

favor.  In support of that conclusion, the court observed that Defendant "filed seven separate speedy trial motions."  The State argues that the court's conclusion failed to consider the context of Defendant's assertion of the right, which, in the State's view, should lead this Court to weigh the assertion of the right factor against Defendant.

**{61}**    The first of Defendant's assertions of his right to a speedy trial was contained within his second counsel's entry of appearance on July 9, 2009.  Defendant next asserted his right to a speedy trial on October 13, 2009, in his pro se motion requesting to withdraw his counsel and attempting to "substitute[] in and enter[] his appearance [pro se.]"  Defendant asserted his right to a speedy trial for the third time in his June 14, 2010, motion in which he attempted, for a second time, to "substitute[] in and enter[] his appearance [pro se], and withdraw[]" his third appointed counsel.  Defendant asserted his right to a speedy trial for the fourth time on April 6, 2011, in his motion to dismiss the case against him on a number of grounds, including a violation of his right to a speedy trial; however, simultaneously with that motion, he filed a motion to vacate the May 16, 2011, trial setting.  On June 16, 2012, Defendant filed a motion to dismiss on speedy trial grounds simultaneously with a motion to vacate the August 13, 2012, trial setting.  Defendant's fourth counsel's entry of appearance, filed June 29, 2012, included a perfunctory demand for a speedy trial.  Defendant asserted his right to a speedy trial for the seventh time on September 18, 2012, when, through counsel, he filed a motion to dismiss on speedy trial grounds.

**{62}**    Defendant's perfunctory assertions of the right contained in his own and his various counsel's entries of appearance and his further assertions of his right to a speedy trial in motions that were filed simultaneously with his own delay-causing actions lead to the conclusion that Defendant did not truly want to be tried speedily.  On the contrary, Defendant's actions suggest that he intended to cause a delay in bringing his case to trial.  That Defendant invoked his right to a speedy trial in words while simultaneously operating in a dilatory manner leads us to conclude that Defendant's assertions of the right were at best nominal and at worst an act of gamesmanship.  The assertion of the right factor does not weigh in Defendant's favor.

**The Prejudice to Defendant**

**{63}**    The district court found that Defendant suffered prejudice in the form of undue anxiety, stress, and oppressive conditions of release as a result of the delay in bringing his case to trial.  The court's conclusion was supported by testimony presented at the December 18, 2012, speedy trial hearing by Defendant, Defendant's pastor who had also acted as his counselor, and a member of Defendant's church.  Among other things, the court found that Defendant's conditions of release, which barred Defendant from contact with children, precluded him from obtaining employment in food service or retail.  Additionally, the court found that Defendant "suffer[ed] from severe anxiety resulting from the on-going delay in this case" and because of that anxiety, Defendant was "increasingly withdrawn, [had] lost friends, [had] ceased participating in his normal activities, [felt] hopeless, suffer[ed] from increased physical pain related to his disability, and [had] been suicidal, requiring in-patient

16

treatment."

**{64}** Notably, Defendant did not produce medical records or affidavits to support his claim of increased physical pain related to his disability. And, although the court faulted the State for its failure to subpoena Defendant's medical records, the burden of proof rested with Defendant, not with the State. *See Spearman*, 2012-NMSC-023, ¶ 39 (requiring the defendant to offer evidence to support his claims of prejudice). Without medical records to support his claims that the delay in this case caused physical ailments, the district court had no basis upon which to conclude that there existed a causal relationship between them.

**{65}** As to the anxiety, stress, and oppressive conditions that the court found Defendant had suffered as a result of the delay, we disregard the State's sufficiency of the evidence argument, and we assume, without deciding, that the court's findings were adequately supported by witness testimony. Nevertheless, owing to Defendant's innumerable delay-causing activities in this case, we cannot conclude that the prejudice factor weighs strongly in his favor. *See Garza*, 2009-NMSC-038, ¶ 25 ("The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." (internal quotation marks and citation omitted)). Throughout the proceedings in the district court, Defendant either intentionally or inadvertently, or both, caused thirty-four months of the forty-three-month delay. Thus, to the extent that Defendant suffered prejudice as a result of the delay, the delay and therefore the prejudice that resulted therefrom was largely of his own making. Under these circumstances, we cannot conclude that the prejudice factor weighs more than slightly in Defendant's favor.

**Balancing the Factors**

**{66}** On balance, no factor weighs heavily against the State. In that almost all of the delay was attributable to Defendant, we see no reason to attribute fault to the State, except technically to conclude that the length of the delay weighs just moderately, at most, against the State, and the prejudice factor weighs just slightly, at best, against the State. The reasons for the delay weighs heavily against Defendant. The assertion of the right is given no weight. With no one factor weighing heavily in Defendant's favor or against the State, and due to Defendant's having largely caused or contributed to almost all of the delay, we cannot conclude that Defendant's right to a speedy trial was violated.

**CONCLUSION**

**{67}** We reverse the district court's order dismissing the case against Defendant on speedy trial grounds. We remand to the district court for further proceedings.

**{68}** **IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

17

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Judge**


_____

**J. MILES HANISEE, Judge**